FISHER v. WINEMAN.

RES JUDICATA—CLAIMS FOR LABOR—PREFERRED DEBTS.

*1. A judgment is not conclusive against one not a party to the suit.

2. Section 2, Act No. 94, Pub. Acts 1887, is void because it provides no method for determining questions of insolvency and preference between those who alone are interested in those issues.

Error to Wayne; Hosmer, J. Submitted January 11, 1901. Decided January 29, 1901.

Replevin by Frank E. Fisher against Hugo A. Wineman and others. From a judgment for defendants, plaintiff brings error. Reversed.

* Head-notes by GRANT, J.

This is an action of replevin. Plaintiff claims title under a chattel-mortgage foreclosure sale. Defendant Wineman claims title as a judgment creditor of the Fisher Electrical Manufacturing Company. The other two defendants are the officers who made the levy under the execution. The Fisher Electrical Manufacturing Company executed a mortgage February 10, 1898, to George W. Bates, as trustee, to secure the payment of $6,037.08, according to certain promissory notes executed by the Electrical Manufacturing Company to the Detroit Savings Bank. Sale upon the foreclosure was made March 9, 1898, to George W. Bates. On October 11, 1899, Bates executed a bill of sale to plaintiff. Defendant Wineman was an employé of the Fisher Electrical Manufacturing Company; brought suit in justice's court for the amount due him, and recovered a judgment for $251.16. The summons, issued May 25, 1899, was in the usual form. The declaration was on the common counts in *assumpsit;* plea, the general issue. Plaintiff filed a bill of particulars for work and labor performed immediately preceding February 15, 1898.[1] In the judgment entry it was stated that the entire amount of said judgment was for labor, and that the same was a preferred claim under Act No. 94 of the Public Acts of 1887 (3 Comp. Laws 1897, §§ 9550–9552). Execution was issued on said judgment November 28, 1899, which execution recited that the judgment was for labor, and that it was a preferred claim under said act. The officers levied upon the goods and chattels which had been sold under the foreclosure sale.

Plaintiff made his case by introducing the foreclosure proceedings and bill of sale, and rested. Defendants then introduced the record of the judgment in the justice's court, the issuing of the execution, the levy upon the property, and rested. Plaintiff then moved for judgment. Defendants insisted that the judgment of the justice was conclusive. The court held that the judgment was not binding upon the plaintiff, because (1) he was not a party to the

---

[1] *I. e.,* the date on which the mortgage was filed.

suit; and (2) because section 2 of the act in question makes no provision for determining the insolvency of the debtor, or that the claim is a labor debt,—and held that this section was nugatory and void. The court then gave defendants an opportunity to put in proofs as to the insolvency of the company and the nature of the debt. To this defendants' attorney objected. The court then informed him that he should direct a verdict for the plaintiff unless he put in further proofs. The attorney did so under protest, and gave evidence of the nature of the claim and the insolvency of the company. The court left it to the jury to determine these two questions, and they rendered a verdict for the defendants.

Act No. 94 is printed in the margin.[1]

*George W. Bates,* for appellant.

*William Stacey,* for appellees.

GRANT, J. (*after stating the facts*). The contention on the part of the defendants that the judgment of the justice of the peace is conclusive against the plaintiff has no foundation either in law or in justice. An insolvent debtor has no interest to prevent or establish preferences

---

[1]Act No. 94, Pub. Acts 1887:

"An act to make all debts for labor preferred claims against the estates of debtors becoming insolvent, and give the same precedence over all debts not a lien on such estates prior to the performance of such labor.

"SECTION 1. *The People of the State of Michigan enact,* That all debts which shall be owing for labor by any person or persons or corporation at the time he, they, or it shall become insolvent shall be preferred claims against the estate of such insolvent debtor or debtors, and have precedence in the payment thereof over all debts owing by such insolvent debtor or debtors at the time of becoming insolvent, which shall not have become a lien on such estate, or some portion thereof, prior to the performance of the labor for which such debts for labor shall be owing.

"SEC. 2. In case of suit upon any such preferred claim, or any claim a part of which is preferred, as above provided, and the same be prosecuted to judgment, the court rendering judgment thereon shall specify in such judgment the part, portion, or amount for which the same is a preferred claim hereunder against the estate of the defendant or defendants, and thereupon executions may be issued from said court requiring that the amount of such preferred

among his creditors. It does not concern him. He has no power to bind them by concessions in suits to which they are not parties. The title to this property had passed from the electrical company to the plaintiff, and he was lawfully in possession thereof. To make such a judgment conclusive upon the plaintiff would be in direct violation of the constitutional provision that "no person shall be deprived of his property without due process of law." Plaintiff was entitled to his day in court. He had not had it. His property was seized under an execution in a suit to which he was a stranger. If this be the proper construction of this statute, it is absolutely void. Two facts must be established in order to create the preference: (1) That the debt is for labor; and (2) that the debtor is insolvent. The statute makes no provision for bringing in lienors who are so by mortgage, attachment, or otherwise. In somewhat analogous proceedings against partnership associations, the law providing for a levy upon the unpaid stock of the members contains suitable provision for giving the partner his day in court. It was held that the statute provided for due process of law. *Rouse, Hazard & Co.* v. *Wayne Circuit Judge*, 104 Mich. 234 (62 N. W. 359, 27 L. R. A. 577, 53 Am. St. Rep. 457). It is significant that, during the 13 years since this act was passed, no attempt has been made, until the one

claim be first made out of the goods and chattels, and, for want thereof, then of the lands and tenements, of the defendant or defendants therein named, and that the remaining portion of such judgment, if any, shall be collected and made under said execution [executions] as any other unpreferred claim is required to be collected and made under the statute in such case made and provided. Any surplus arising from the sale of any property under any such execution shall be disposed of according to law.

"SEC. 3. Any person having a preferred claim hereunder the amount whereof shall be one hundred dollars or more, or any two or more persons having such claims the aggregate amount whereof shall be one hundred dollars or more, and who may join for the purpose, may proceed in chancery for the appointment of a receiver, and the marshaling of assets, and the application thereof to the payment of the claim or claims involved, *pro rata* or otherwise, in case of any fraud affecting such claim or claims, or the recovery, satisfaction, or payment thereof, or if a common-law or other assignment for the benefit of creditors shall have been made by the defendants or any of them."

now before us, to proceed in a suit at law under it. Evidently the profession has recognized the difficulty, if not impossibility, of proceeding under it at law. Several cases have been brought under the first and third sections, and all upon the equity side of the court. The title to the act, as well as the language of the first section, leads to the inference that proceedings were contemplated against the estates of debtors, and not against the debtors themselves. Counsel for plaintiff states that he has made diligent search, but is unable to find a law similar to this in any other State, and neither counsel has cited any such law or authorities upon the question.

If it be held that the question of insolvency and of preference can be raised in a collateral suit, which plaintiff was forced to begin or abandon his rights, it would result (1) that the determination by the justice of insolvency and of preference is useless, for it would bind nobody; and (2) that the issues of insolvency and preference must be tried again in every such collateral suit. It must result that these questions would be in issue in every such case, and one jury might decide in favor of insolvency, and another, upon the same state of facts, might not. Section 2 of the statute (Act No. 94, Pub. Acts 1887) makes no provisions and provides no methods for determining questions of insolvency and preference between those who alone are interested in those issues. We are therefore of the opinion that it is inoperative and void.

The judgment is reversed, and new trial ordered.

The other Justices concurred.