## FOWLER *v.* BLOUNT.

1. JUDGMENT—RES JUDICATA—PARTIES.

   A decree in a divorce case awarding to the complainant wife a lien for alimony on real property claimed by her to belong to her husband, who, however, denied his alleged ownership, and claimed that his grantors had never delivered the deed to him, except for the agreed purpose of destroying it, was not *res judicata* as to the claimants who were not parties to the proceeding: in a subsequent suit to foreclose the wife's lien, they were not concluded from asserting their title.

2. SAME—ESTOPPEL—DIVORCE.

   Nor was the owner estopped by the decree of divorce from setting up her title or interest, though she was a witness in the divorce case.

3. SAME—GENERAL RULE.

   To constitute a judgment on estoppel there must be an identity of parties as well as of subject-matter, that is, it is necessary that the parties between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same

capacities and in the same antagonistic relation or else they must be in privity with the parties in such former action.

4. SAME—EVIDENCE.

Reviewing the conclusion of the lower court on the facts, it is *held*, that the evidence sustained the claim of defendants that the deed was never unconditionally delivered, but was turned over to the grantee with instructions to burn it up.

Appeal from Newaygo; Barton, J. Submitted April 10, 1916. (Docket No. 44.) Decided June 1, 1916.

Bill by Ada E. Fowler and another against Caroline Blount and others to enforce a lien granted in divorce proceedings as against real property of defendants. From a decree for defendant named, complainants appeal. Affirmed.

*Albert G. Day,* for complainants.

*William J. Branstrom,* for defendant.

STONE, C. J. In this cause the bill of complaint was filed January 6, 1915, to foreclose an alleged lien by virtue of a decree in a divorce case entered on June 15, 1905, affecting the north half of the southwest quarter of section 8 in township 13 north of range 13 west, being in the township of Sherman and county of Newaygo. The following statement will aid in an understanding of the issues involved:

In 1896 one Adolphus Graham was the owner of the whole southwest quarter of said section of land. On October 14, 1896, said Graham and wife conveyed the north half of the southwest quarter of said section to Asher P. Blount, who was a son of Lucius W. Blount, and on the same day said Graham and wife conveyed the south half of said southwest quarter to said Lucius W. Blount. Both of said deeds were made subject to

mortgages. It was the understanding that Asher P. Blount was to assume one-half of the mortgage indebtedness against said quarter section of land. After the deeds were executed and delivered it was ascertained that the parties who held the mortgages would not consent to a division of the mortgage indebtedness between the father and son, and it is undisputed that the son, Asher P. Blount, and his first wife, conveyed the said north half of the said southwest quarter to the father, Lucius W. Blount, on October 17, 1896, thus vesting in Lucius W. Blount the title of the whole southwest quarter of said section of land. The title to the whole southwest quarter of said section continued to stand of record in Lucius W. Blount until October 14, 1912, when he and his wife conveyed the same to one Sarah L. Tufts, who on the same day conveyed said southwest quarter to Lucius W. Blount and his wife, Caroline Blount, thus placing the title of record in the last-named parties as tenants by the entireties.

In the meantime, and, it is claimed, in the fall of 1896, while the father, Lucius W. Blount, was the owner of the entire quarter section, desiring that the son, Asher P. Blount, should have the north half of the premises upon condition that he pay one-half of the mortgage debt on the entire property, it appears that a contract or deed was made out, signed, and acknowledged by the father, Lucius W. Blount, to the said son. Whether this instrument was a deed or contract, and whether it was signed by the mother, Caroline Blount, and whether it was ever delivered to Asher P. Blount, were disputed questions in this case, as well as in the divorce case to be later referred to.

The complainant Ada E. Fowler, whose maiden name was Ada E. Warren, was married to Asher P. Blount on or about November 22, 1898. She continued to live with him until some time in 1903. They

had one child. About March 10, 1904, said Ada E. filed a bill for divorce alleging that the said Asher P. Blount had been guilty of extreme cruelty. In her bill of complaint in the divorce case said Ada E. charged that Asher P. Blount was the owner of the north half of 'said southwest quarter; that the same had been deeded to him prior to her marriage by the said Lucius W. Blount and Caroline Blount, which deed had been duly delivered to said Asher P. Blount, but never recorded. She also charged that in the latter part of the autumn of 1902 the said Asher P. Blount informed her that in February, 1902, he had burned and destroyed said deed. She further stated that she had never consented to the destruction of said deed, and prayed that said land be decreed to be the property of said Asher P. Blount, "in spite of the subsequent destruction of said deed." A notice of *lis pendens* describing said land was duly filed and recorded in the divorce case, and the chancery subpœna which was directed to and served upon Asher P. Blount only contained an underwriting that:

"A personal decree is sought against the defendant, and the bill is filed to reach interests in property."

In his answer to the bill in the divorce case Asher P. Blount denied that he was the owner of said land. He admitted that a warranty deed of said land had been executed by his parents to him, but he denied that it was ever delivered to him. He admitted that he did burn and destroy the deed. He alleged that he was and had been since his marriage to the complainant an invalid, unable to labor and he further alleged:

"That the agreement between his father and himself in relation to said land was that as soon as he was able to pay off his share of the mortgage the deed should be delivered to him, but, when he became sick and disabled, he became discouraged, and concluded

that he would never be able to pay it, and that he had better give up all claim to it, and with the consent of his mother, who gave him the deed for that purpose, he destroyed it. Ever since that time, and even before the deed was destroyed, his parents have considered and treated the land as their own, and have made valuable improvements thereon, in the way of putting up and repairing buildings, erecting a windmill, building fences, setting out orchards, etc., so that the place is now much more valuable than at the time when defendant was finally disabled."

Upon the hearing in the divorce case there was testimony pro and con relating to the title and ownership of said land, and both Lucius W. Blount and Caroline Blount were examined as witnesses relating thereto on behalf of the defendant therein; but neither the said Lucius W. Blount nor Caroline Blount was a party in that case.

In the divorce case, by its decree, the court granted a divorce as prayed for, with the custody of the child. It decreed the title to said land to be in said Asher P. Blount. It awarded to the complainant as permanent alimony the sum of $400, to be paid within 30 days, or, at the option of the defendant therein, $200 in 30 days and $200 within one year. In addition, it awarded the complainant $3 each and every month toward the maintenance of the minor child, with costs, including a solicitor's fee of $50. It also made said permanent alimony, as well as the amount provided for said maintenance and the costs and expenses of the suit, a lien on the said land until the whole should be fully paid. A certified copy of the decree was duly recorded in the office of the register of deeds. Nothing has ever been paid on said decree.

In the bill of complaint in the instant case to foreclose said claimed lien Asher P. Blount and Lucius W. Blount were made defendants. It appearing, however, of record that they had both died before the bill was filed, their names were dropped, and the case proceed-

ed to a hearing against the defendant Caroline Blount. The bill of complaint prayed that the land be sold to satisfy the lien.

The answer of Caroline Blount claims that she is the owner of said land as the survivor of her husband; that the decree in the divorce case was void as to her and her husband, they neither of them being a party to such suit; that she and her husband had been in open and notorious possession of said premises for more than 15 years; that they had paid the taxes, made large improvements thereon, and paid off the mortgage on said property. She asks for affirmative relief by way of cross-bill to the end that the decree in the divorce case, in so far as it asserts a lien on said premises, be declared void and a cloud upon her title. Upon the hearing the testimony was taken in open court, and the learned circuit judge dismissed the bill of complaint, and granted the relief prayed for in the cross-bill, holding that Asher P. Blount did not have title to said land; that, if any instrument conveying said land to Asher P. Blount was ever executed, as alleged, it was never delivered so as to vest any title in and to the said premises in him; that Caroline Blount was the owner of the premises as the survivor of her husband; that the decree in the divorce case was not *res adjudicata* of the question of title, the said Lucius W. Blount and Caroline Blount never having been made parties in that suit; that said decree, in so far as it attempted to create a lien upon said premises, was null and void, and, being of record, was a cloud upon the title of said Caroline Blount in and to the same, and the same was set aside and vacated, and costs were awarded to the defendant against both complainants. It should be stated that Edward E. Edwards was made a complainant herein because of his interest in the solicitor's fee and costs in the divorce case; he having

been the solicitor for the complainant in that case. The complainants have appealed.

The claims of appellants may well be considered under three general questions:

(1) Was the decree of divorce entered on June 15, 1905, which, in order to secure the payment of alimony, sought to create a lien on the land involved, *res adjudicata* as to this defendant, she not having been a party in that case?

(2) Is the defendant estopped in this case to assert her own title to the property in question because of the decree of divorce, in which case neither she nor her predecessor in title was made a party?

(3) Did Lucius W. Blount and Caroline Blount ever deliver the deed to Asher P. Blount?

1. The first question must be answered in the negative. The defendant, not being a party in the divorce case, is not bound by that decree. She never had her day in court there. It is of no consequence that she was a witness in that case. She could not have appealed from that decree. She had no control of the case whatever. *Detroit Savings Bank* v. *Truesdail*, 38 Mich. 430; *Young's Appeal*, 52 Mich. 592 (18 N. W. 373) ; *Axford* v. *Graham*, 57 Mich. 422 (24 N. W. 158) ; *Love* v. *Francis*, 63 Mich. 181 (29 N. W. 843, 6 Am. St. Rep. 290) ; *Fisher* v. *Wineman*, 125 Mich. 642 (84 N. W. 1111, 52 L. R. A. 192) ; *City of Detroit* v. *Railway*, 134 Mich. 11 (95 N. W. 992, 99 N. W. 411, 104 Am. St. Rep. 600) ; *Bean* v. *Bean*, 163 Mich. 379-396 (128 N. W. 413) ; *Bacon* v. *Walden*, 186 Mich. 139 (152 N. W. 1061).

2. The second question also must be answered in the negative, and for the same reason as that already given. The rule is stated in volume 23 of Cyc. at page 1237, as follows:

"To constitute a judgment an estoppel, there must be an identity of parties as well as of the subject-matter; that is, it is necessary that the parties as between

whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action."

In *Blackwood* v. *Brown*, 32 Mich. 104, suit was in part based upon a duebill belonging to the wife of the plaintiff, and it was held that the judgment in such a case in favor of the plaintiff would be no bar to the right of the wife, the real owner, to recover, and the fact that she was called as a witness in her husband's behalf in his suit on the duebill would not estop her from afterwards suing in her own name on the same demand, at least where she had testified that she was still the owner. It is a significant fact that in the divorce case both the defendant and her husband had testified and strenuously insisted that they were the owners of the land in question, and that Asher had no interest in it. There is no estoppel under such circumstances.

3. Was the deed, if one was executed, ever delivered to Asher P. Blount? Upon this subject the testimony was conflicting. The trial court had the advantage of seeing and hearing the witnesses testify. We have read the entire record with care, and are of the opinion that by a preponderance of the evidence it appears that, if a deed was ever executed by Lucius W. Blount and Caroline Blount to Asher, it was never delivered to him to operate as a conveyance, but handed to him to be burned, and that it was destroyed by him because of the fact that he was a hopeless invalid and was satisfied that he could not perform the condition upon which it was to become operative.

We agree with the trial court in reaching this conclusion; and, as delivery of the deed by Lucius W. Blount was essential to its validity, we agree with the court below in the disposition of the case.

The equities of the case are clearly with the defendant, and the decree below is affirmed, with costs to her.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.